[No. B009967. Second Dist., Div. Six. Nov. 12, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTIN ALDEN MESSERVY, Defendant and Appellant.

**COUNSEL**

David F. Blaisdell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Patra Woolum, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—Martin Alden Messervy appeals his conviction for unlawful cultivation of marijuana. (Health & Saf. Code, § 11358.)

We affirm the denial of his motion to suppress under Penal Code section 1538.5, and hold that the flight of a police helicopter, over an open field at an altitude of approximately 150 feet, does not constitute a violation of Messervy's Fourth Amendment rights.

### FACTS

Ventura Sheriff's Deputy Carpenter received information from a citizen that marijuana was being grown approximately six miles up the Quatal Canyon Road off Highway 33. Carpenter then looked for the marijuana by flying over Quatal Canyon as a passenger in a helicopter.

While the helicopter was flying back and forth at an altitude of about 150 feet, Carpenter saw 10 to 15 marijuana plants surrounded by white buckets. A road led from the marijuana to a hill, on the other side of which was a trailer. Carpenter testified the trailer was between "a quarter and a half mile away" from the marijuana plants, and was the closest structure to the mar-

ijuana. He described the trailer as being "like a single wide mobile home-type trailer."

Carpenter also saw two people in front of the trailer loading boxes into the trunk of a car. He thought that the items being loaded in the car might have been weight scales, bags, or even marijuana itself.

When the two men got in the car and drove off, the helicopter gave chase. After one unsuccessful attempt to stop the car, the officers finally succeeded in stopping it and apprehended the two men, Messervy and his brother-in-law.

Carpenter testified that he believed the men in the car were involved in the cultivation of marijuana because of "the location of the marijuana in proximity to the trailer, the road going past the tank and around to the trailer, the people putting the items in a hurried fashion into the car and then driving out, . . ." He stated the marijuana was being grown on "lease land" and was visible from a surface road maintained by the forestry department.

Messervy's brother-in-law testified that at one point the helicopter was flying about 50 to 100 feet above the ground.

## DISCUSSION

### I

Messervy contends the trial court erred in denying his motion to suppress, among other things, the officer's observations of marijuana from a helicopter. He argues that the helicopter flight over the marijuana plants at an altitude of 50 to 100 feet above the ground violated his Fourth Amendment right to privacy. He also argues that the helicopter should have flown higher, and the deputy should have used binoculars.

Messervy's motion to suppress is subject to the federal exclusionary rule. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]. The "open fields" doctrine was first enunciated in *Hester* v. *United States* (1924) 265 U.S. 57, 58 [68 L.Ed. 898, 899, 44 S.Ct. 445] and permitted police officers to enter and search a field without a search warrant. In *Oliver* v. *United States* (1984) 466 U.S. 170 [80 L.Ed.2d 214, 104 S.Ct. 1735], the United States Supreme Court stated that "an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers." (466 U.S. at p. 181 [80 L.Ed.2d at pp. 225-226].) Only the area immediately surrounding the home comes within the Fourth

Amendment's protection of "'persons, houses, papers, and effects' . . ." (*Id.*, 466 U.S. at p. 177·[80 L.Ed.2d at p. 222].) Therefore, the officers in *Oliver* acted reasonably in walking down a path in a forest area where they observed marijuana despite a "no trespassing" sign.

Here, Messervy had no right to an expectation of privacy concerning the crop of marijuana. It was found in a wilderness area on lease land. There was only one main dirt road which was maintained by the forestry department. The marijuana was at least a quarter of a mile away from the trailer. The land where the marijuana was growing could hardly qualify as part of the "curtilage" of the trailer. "It is clear, . . . that the term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech." (*Oliver* v. *United States, supra,* 466 U.S. 170, 180 [80 L.Ed.2d 214, 225, fn. 11].)

Carpenter also testified that helicopters, and military, forestry and private planes fly regularly over the area each month. Also, there was an unobstructed view of the marijuana from a dirt road. Messervy, therefore, could not have a reasonable expectation of privacy. The trial judge pointed out "[t]his is the widest and openest of wide-open spaces. It is great, rolling acres of nothing and I just cannot envision anyone expecting privacy out there." Neither can we.

As the People point out the cases cited by Messervy, *People* v. *Joubert* (1981) 118 Cal.App.3d 637 [173 Cal.Rptr. 428], *People* v. *Sneed* (1973) 32 Cal.App.3d 535 [108 Cal.Rptr. 146], and *Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112 [110 Cal.Rptr. 585] are inapposite.

It is true that in *Sneed,* the observation from a helicopter flying at a height of approximately 20-25 feet of a single marijuana plant growing in a ranch corral was held to be unreasonable. The court recognized that there would be no objective, reasonable expectation of privacy from aerial observation from a reasonable height. But, the *Sneed* case and the other cases cited by Messervy involve observations of land that belong to the defendant. There is no evidence that Messervy owned the land where the marijuana was found.

## II

█ The deputies had probable cause to arrest Messervy. Messervy and his brother-in-law were quickly loading items into a car near the marijuana plants. They then drove away. Carpenter had reasonable cause to believe that the two men were involved in the cultivation of marijuana. "'When

circumstances demand immediate investigation by the police, the most useful, most available tool for such investigation is general on-the-scene questioning, designed to bring out the person's explanation or lack of explanation of the circumstances which aroused the suspicion of the police, and enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' [Citation.]" (*People* v. *Warren* (1984) 152 Cal.App.3d 991, 996-997 [199 Cal.Rptr. 864].)

The People make a cogent point when they state that the deputy's "reasonable suspicion deepened into probable cause" when Messervy evaded the deputies and failed to stop. All of these facts led Officer Carpenter "'". . . to believe and conscientiously entertain an honest and strong suspicion that the person[s] [were] guilty of a crime."'" (*People* v. *Jones* (1981) 126 Cal.App.3d 308, 313 [178 Cal.Rptr. 818], citing *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].)

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.